**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

|  |  |
|---|---|
| BILLY MILAM,<br><br>        Plaintiff,<br><br>    vs.<br><br><br>ANGIODYNAMICS, INC. & NAVILYST<br>MEDICAL, INC.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:   3:24-cv-729-CRS<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) NEGLIGENCE**<br>**(2) DESIGN DEFECT**<br>**(3) FAILURE TO WARN**<br>**(4) BREACH OF IMPLIED WARRANTY**<br>**(5) BREACH OF EXPRESS WARRANTY**<br>**(6) FRAUDULENT CONCEALMENT**<br>**(7) VIOLATION OF THE KENTUCKY**<br>    **CONSUMER PROTECTION ACT**<br>    **(KCPA)**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

**COMES NOW** Plaintiff BILLY MILAM, by and through the undersigned counsel, and for his Complaint against AngioDynamics, Inc. and Navilyst Medical, Inc., (collectively, the "Defendants"), and alleges as follows:

1.  This is an action for damages arising out of failures relating to the Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective implantable vascular access device sold under the trade name of SmartPort CT (hereinafter "SmartPort CT" or "Defective Device", or "port-a-cath").

## PARTIES

2.  BILLY MILAM ("Plaintiff" or "BILLY MILAM") is an adult citizen and resident of Baldwin County, Alabama. Plaintiff was implanted with the Defendants' SmartPort CT product for the treatment of his medical condition; Plaintiff sustained serious injuries due to the defective

– 1 –

COMPLAINT

SmartPort CT and due to the Defendants' tortious conduct, as shown below in the main body of this Complaint.

3.     Defendant AngioDynamics, Inc. ("AngioDynamics") is a Delaware corporation with its principal place of business located in Latham, New York. AngioDynamics is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort CT.

4.     Defendant Navilyst Medical, Inc. ("Navilyst") is a Delaware corporation with its principal place of business located in Marlborough, Massachusetts. Navilyst conducts business throughout the United States, including the State of Kentucky, and is a wholly owned subsidiary of AngioDynamics. Navilyst is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort CT.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 by virtue of the facts that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District, and (b) the Defendants' products are produced, sold to, and consumed by individuals in the State of Kentucky and in this District, thereby subjecting the Defendants to personal

jurisdiction in this action and making them all "residents" of this judicial District.

7.    The Defendants have and continue to conduct substantial business in the State of Kentucky and in this District, distribute vascular access products in this District, receive substantial compensation and profits from sales of vascular access products in this District, and made material omissions and misrepresentations and breaches of warranties in this District, to subject them to *in personam* jurisdiction in this District.

8.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over the Defendants because the Defendants are present in the State of Kentucky, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

## PRODUCT BACKGROUND

9.    In or about 2007, a company called Rita Medical Systems, Inc. received clearance via the 510(k) Premarket Notification Program from the Food and Drug Administration (FDA) to market and sell a product called Vortex® Port Access System.

10.   Around the same time, AngioDynamics completed the acquisition of the assets and liabilities of Rita Medical Systems, Inc. and rebranded the subject product as SmartPort CT.

11.   Defendants' Vascular Access Devices were designed, patented, manufactured, labeled, marketed, sold, and distributed by the Defendants at all times relevant to this action.

12.   The SmartPort CT is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by the Defendants.

COMPLAINT

13.     According to the Defendants, the SmartPort CT is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

14.     The intended purpose of SmartPort CT is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

15.     Upon information and belief, the SmartPort CT, in this case, is a system consisting of two primary components: an injection port and a silicone catheter which includes additives intended to make it radiopaque.

16.     The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication. The medication is carried from the port into the bloodstream through a small, flexible tube, called a catheter, which is inserted into a blood vessel.

17.     The SmartPort CT is indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples.

18.     Upon information and belief, the product's catheter is comprised of a polymeric mixture of silicone and a barium sulfate radiopacity agent.

19.     Barium sulfate is known to contribute to reduction of the mechanical integrity of silicone *in vivo* as the particles of barium sulfate dissociate from the surface of the catheter over time, leaving microfractures and other alterations of the polymeric structure and degrading the mechanical properties of the silicone.

COMPLAINT

20. Researchers have shown that catheter surface degradation in products featuring a radiopaque barium sulfate stripe is concentrated at the locus of the stripe.[1]

21. The design of the product at issue includes a catheter with a stripe containing a stripe with a higher concentration of barium sulfate than the rest of the catheter.

22. According to relevant medical literature, such design is proven to have a higher rate of the port-a-cath-related infections than catheters without the barium-loaded stripe.

23. The mechanical integrity of barium sulfate-impregnated silicone is affected by the concentration of barium sulfate as well as the heterogeneity of the modified polymer.

24. Upon information and belief, the Defendants' manufacturing process in designing and constructing the catheter implanted in Plaintiff involved too high a concentration of barium sulfate particles for the polymer formulation, leading to improperly high viscosity of the admixed silicone before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix.

25. This defect in the manufacturing process led to a heterogeneous modified polymer which led to an irregular catheter surface replete with fissures, pits, and cracks as well as sections of the catheter lumen which contain more than 30% barium sulfate by weight, reducing the catheter strength at those loci.

26. The fissures, pits, and cracks on the catheter's surface can promote said surface's roughness, and thus, by providing shelter to bacteria and/or fungi, can harbor bacteria and/or fungi

---

[1] See Hecker JF, Scandrett LA. Roughness and thrombogenicity of the outer surfaces of intravascular catheters. *J Biomed Mater Res*. 1985;19(4):381-395. doi:10.1002/jbm.820190404

COMPLAINT

that in turn can cause infection(s).  The formation of a biofilm on the polymeric matrix would also contribute to the development of infection(s).

27.    Although the surface degradation and resultant catheter-related infections can be reduced or avoided with design modifications (e.g., using a higher grade radiopacity compound and/or encapsulating the admixed polymer within silicone), the Defendants elected not to incorporate those design elements into the SmartPort CT.

28.    At all times relevant to this action, the Defendants misrepresented the safety of the SmartPort CT system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the SmartPort CT system as safe and effective device to be surgically implanted to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

29.    At all times relevant to this action, the Defendants knew or should have known that the SmartPort CT devices were not safe for the patients for whom they were prescribed and implanted, because once implanted, the devices were prone to facilitating and promoting the catheter-related infection(s) and otherwise malfunctioning.

30.    At all times relevant to this action, the Defendants knew or should have known that patients implanted with the SmartPort CT had an increased risk of suffering life threatening injuries, including but not limited to: death; infections; thrombosis; hemorrhage; cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart); cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; and perforations of tissue, vessels and organs, or the need for additional surgeries

COMPLAINT

to remove the defective device.

31.   Soon after the SmartPort CT was introduced to market, which was, upon information and belief, years before Plaintiff was implanted with his device, the Defendants began receiving large numbers of adverse event reports ("AERs") from healthcare providers reporting that the SmartPort was facilitating and promoting the catheter-related infections. These failures were often associated with reports of severe patient injuries such as:

1.   hemorrhage.

2.   cardiac/pericardial tamponade.

3.   cardiac arrhythmia and other symptoms similar to myocardial infarction.

4.   severe and persistent pain.

5.   perforations of tissue, vessels, and organs; and

6.   upon information and belief, death.

32.   In addition to the large number of AERs which were known to the Defendants and reflected in publicly accessible databases, there were many recorded device failures and/or injuries related to the Defendants' implantable port products which were concealed from medical professionals and patients through submission to the FDA's controversial Alternative Summary Reporting ("ASR") program.

33.   The FDA halted the ASR program after its existence was exposed by a multi-part investigative piece, prompting a widespread outcry from medical professionals and patient advocacy groups.[2]

---

[2]  Christina Jewett, *Hidden Harm: Hidden FDA Reports Detail Harm Caused by Scores of Medical Devices*, Kaiser Health News (Mar. 2019)

COMPLAINT

34.     Prior to the discontinuation of the ASR program, the Defendants reported numerous episodes of failures of their implanted port/catheter products – including numerous episodes of the catheter-related infections– under the ASR exemption-thereby concealing them from physicians and patients.

35.     The Defendants knew or should have known that the SmartPort CT had a substantially higher infections rate than other similar products then on the market, yet the Defendants failed to warn consumers of this fact.

36.     The Defendants also intentionally concealed the severity of complications caused by the SmartPort CT and the likelihood of these events occurring.

37.     Rather than alter the design of the SmartPort CT to make it safer or adequately warn physicians of the dangers associated with the SmartPort CT, the Defendants continued to actively and aggressively market the SmartPort CT as safe, despite their knowledge of numerous reports of the catheter-related infections.

38.     Moreover, the Defendants concealed—and continue to conceal—their knowledge of the SmartPort CT's dangerous propensity to precipitate the catheter-related infections. The Defendants further concealed their knowledge that the catheter design caused these failures and that these failures cause serious injuries.

39.     The conduct of the Defendants, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of BILLY MILAM.

40.     The Defendants had actual knowledge of the dangers presented by the SmartPort,CT, yet consciously failed to act reasonably to:

– 8 –

COMPLAINT

a.  Adequately inform or warn Plaintiff, his prescribing physicians, or the public at large of these dangers.

b.  Establish and maintain an adequate quality and post-market surveillance system; or

c.  Recall the SmartPort CT from the market.

**SPECIFIC FACTUAL ALLEGATIONS AS TO BILLY MILAM**

41.   On or about May 3, 2010, BILLY MILAM underwent placement of an AngioDynamics' SmartPort CT product, Catalog Number CT96STSD. Upon information and belief, the device's description is as follows: Smart Port CT Single Titanium Port System with Attachable 9.6F x 66cm Silicone Catheter.

42.   Upon information and belief, the device at issue was implanted by Dr. Charles F. Winkler, MD., at Western Baptist Hospital, in Louisville, Kentucky, for long-term venous access for Plaintiff's medical condition.

43.   The Defendants, directly or through their agents, apparent agents, servants, or employees designed, manufactured, marketed, advertised, distributed, and sold the SmartPort CT that was implanted in BILLY MILAM.

44.   The Defendants manufactured, sold, and/or distributed the SmartPort CT to BILLY MILAM, through his doctors, to be used for long-term venous access.

45.   On or about June 03, 2010, Plaintiff's port-a-cath at issue was scheduled for removal.

46.   On or about June 3, 2010, Dr. David West, M.D. removed Plaintiff's port-a-cath at issue, as the pre-op diagnosis indicated that Plaintiff's port-a-cath became infected while being

implanted. Upon information and belief, the removal procedure in question took place at Western Baptist Hospital, in Louisville, Kentucky.

47.    Upon the removal of Plaintiff's port-a-cath, it was determined that Plaintiff's port-a-cath at issue was indeed infected.

48.    At all times relevant to this action, the SmartPort CT was utilized and implanted in a manner foreseeable to the Defendants, as the Defendants generated the instructions for use and created procedures for implanting the product at issue.

49.    The SmartPort CT implanted in BILLY MILAM was in the same or substantially similar condition as when it left the possession of the Defendants and in the condition directed by and expected by the Defendants.

50.    BILLY MILAM and his physicians foreseeably used and implanted the SmartPort CT and did not misuse or alter the SmartPort CT in an unforeseeable manner.

51.    The Defendants advertised, promoted, marketed, sold, and distributed the SmartPort CT as a safe medical device when the Defendants knew or should have known the SmartPort CT was not safe for its intended purposes and that the product could cause serious medical problems.

52.    The Defendants had sole access to material facts concerning the defective nature of the SmartPort CT product and its propensity to cause the catheter-related infections.

53.    In reliance on Defendants' representations, BILLY MILAM's doctors were induced to, and did use the SmartPort CT.

54.    As a result of having the SmartPort CT implanted, BILLY MILAM has experienced significant pain and suffering, has undergone additional surgeries, and has suffered

– 10 –

COMPLAINT

financial or economic loss, including, but not limited to obligations for medical services and expenses.

55.    The Defendants' SmartPort CT devices were marketed to the medical community and to patients as safe, effective, and reliable medical devices implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, and as safer and more effective as compared to the traditional products and procedures for treatment and other competing Vascular Access Devices.

56.    The Defendants have marketed and sold the Defendants' SmartPort CT to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include but are not limited to direct-to-consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and/or group purchasing organizations, and include a provision of valuable consideration and benefits to the aforementioned.

57.    The injuries, conditions, and complications suffered due to the Defendants' SmartPort CT include, but are not limited to infections; necrosis; fracture and leakage; blood clots; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; perforations of tissue, vessels and organs; and death.

58.    The Defendants were negligent towards BILLY MILAM in the following respects:

   a.   The Defendants failed to design and establish a safe, effective procedure for removing SmartPort CT; therefore, in the event of a failure, injury, or complications it is difficult to safely remove SmartPort CT; and

– 11 –

COMPLAINT

b. The Defendants provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians using SmartPort CT for the purpose of increasing their sales. By so doing, the Defendants caused the dissemination of inadequate and misleading information to patients, including BILLY MILAM.

59. The SmartPort CT was utilized and implanted in a manner foreseeable to the Defendants.

60. The SmartPort CT implanted into BILLY MILAM was in the same or substantially similar condition as when it left the possession of the Defendants and in the condition directed by the Defendants.

61. At the time of his operation, BILLY MILAM was not informed of, and had no knowledge of the complaints, known complications and risks associated with SmartPort CT, including, but not limited to the extent of seriousness of the danger of the catheter-related infections.

62. BILLY MILAM was never informed by the Defendants of the defective and dangerous nature of SmartPort CT.

63. At the time of his implant, upon information and belief, neither BILLY MILAM nor his physicians were aware of the defective and dangerous condition of the SmartPort CT.

64. As a result of the Defendants' actions and inactions, BILLY MILAM has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering and medical expenses.

### COUNT I: NEGLIGENCE
(Against Defendants AngioDynamics and Navilyst)

– 12 –

COMPLAINT

65.    Plaintiff incorporates the preceding paragraphs as if set out fully herein.

66.    The Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling, and conducting post-market surveillance of the SmartPort CT.

67.    The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

    a.    Failing to properly and thoroughly test the SmartPort CT before releasing the device to market, and/or failing to implement feasible safety improvements.

    b.    Failing to properly and thoroughly analyze the data resulting from any pre-market testing of the SmartPort CT.

    c.    Failing to conduct sufficient post-market testing and surveillance of the SmartPort CT.

    d.    Failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the SmartPort CT;

    e.    Designing, manufacturing, marketing, advertising, distributing, and selling the SmartPort CT to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the SmartPort CT and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device.

    f.    Failing to exercise due care when advertising and promoting the SmartPort CT;

COMPLAINT

and

g.  Negligently continuing to manufacture, market, advertise, and distribute the SmartPort CT after the Defendants knew or should have known of its adverse effects.

68.  As a direct, actual, and proximate cause of the Defendants' actions, omissions, and misrepresentations, Plaintiff has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering and medical expenses.

69.  In performing the foregoing acts, omissions, and misrepresentations, the Defendants acted grossly negligently, fraudulently, and with malice.

## COUNT II: STRICT PRODUCTS LIABILITY – DESIGN DEFECT
(Against Defendants AngioDynamics and Navilyst)

70.  Plaintiff incorporates the preceding paragraphs as if set out fully herein.

71.  The Defendants supplied, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the SmartPort CT implanted into Plaintiff.

72.  The SmartPort CT implanted into Plaintiff was not reasonably safe for its intended use and was defective with respect to its design.

73.  The SmartPort CT was in a defective condition and was defective in its design in that when it left the possession and control of the Defendants, it was not safe for its anticipated use and safer, more reasonable alternative designs existed that could have been utilized by the Defendants.

74.  The SmartPort CT was unreasonably dangerous to the user or consumer, taking into consideration the utility of said product and the risks involved in its use. The foreseeable risks

– 14 –

COMPLAINT

associated with the design of the product were more dangerous than a reasonably prudent consumer such as Plaintiff and/or his physicians would expect when the product was used for its normal and intended purpose.

75.     The SmartPort CT was expected to and did reach the consumer without substantial change in the condition in which it was supplied, distributed, sold, and/or otherwise placed into the stream of commerce.

76.     A reasonably prudent medical device manufacturer would have recognized the defective design of the SmartPort CT and not placed it into the stream of commerce.

77.     The design defects in the SmartPort CT were not known, knowable and/or reasonably apparent to Plaintiff and/or his physicians, or discoverable upon any reasonable examination.

78.     The SmartPort CT was used and implanted in the manner in which it was intended to be used and implanted by the Defendants pursuant to the instructions for use and the product specifications provided by the Defendants.

79.     The Defendants are strictly liable to Plaintiff for designing, manufacturing, marketing, labeling, packaging, and selling a defective product.

80.     As a direct, actual, and proximate cause of the Defendants' actions, omissions, and misrepresentations, Plaintiff has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering, and medical expenses.

81.     In performing the foregoing acts, omissions, and misrepresentations, the Defendants acted grossly negligent, fraudulently, and with malice.

### COUNT III: STRICT PRODUCTS LIABILITY – FAILURE TO WARN
(Against Defendants AngioDynamics and Navilyst)

– 15 –

COMPLAINT

82.    Plaintiff incorporates the preceding paragraphs as if set out fully herein.

83.    The Defendants designed, set specifications, manufactured, assembled, processed, marketed, labeled, distributed, and sold the SmartPort CT, including the one implanted in Plaintiff, into the stream of commerce, and in the course of the same, directly advertised and marketed the device to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

84.    At the time the Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the device was defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use, namely as an implanted port-a-cath system to administer intravenous fluids and/or medications.

85.    The Defendants failed to adequately warn of the device's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.

86.    The Defendants knew or should have known at the time they manufactured, labeled, distributed, and sold the SmartPort CT that was implanted into Plaintiff that the SmartPort CT posed a significant and higher risk than other similar devices of device-related infections and resulting serious injuries.

87.    The Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the SmartPort CT; no reasonable healthcare provider, including the Plaintiff's, or patient, including Plaintiff, would have used the device in the manner directed, had

those facts been made known to the prescribing healthcare providers or the consumers of the device.

88.    The warnings, labels, and instructions provided by the Defendants at all times relevant to this action, are and were inaccurate, intentionally misleading, and misinformed, and misrepresented the risks and benefits and lack of safety and efficacy associated with the device.

89.    The health risks associated with the device, as described herein, are of such a nature that ordinary consumers would not have readily recognized the potential harm.

90.    The SmartPort CT, which was designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold into the stream of commerce by the Defendants, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

91.    When Plaintiff was implanted with the device, the Defendants failed to provide adequate warnings, instructions, or labels regarding the severity and extent of health risks posed by the device, as discussed herein.

92.    The Defendants intentionally underreported the number and nature of adverse events associated with the catheter-related infections to Plaintiff's health care providers, as well as the FDA.

93.    Upon information and belief, neither Plaintiff nor his health care providers knew of the substantial danger associated with the intended and foreseeable use of the device, as described herein.

94.     Plaintiff and his health care providers used the SmartPort in a normal, customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to

COMPLAINT

deliver medications directly into the patient's bloodstream.

95.     Upon information and belief, the defective and dangerous condition of the SmartPort CT devices, including the one implanted into Plaintiff, existed at the time they were manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold by the Defendants to distributors and/or healthcare professionals or organizations.

96.     Upon information and belief, the SmartPort CT implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed, and sold by the Defendants.

97.     The Defendants' lack of sufficient warnings and/or instructions is the direct and proximate cause of Plaintiff's serious physical injuries and economic damages in an amount to be determined at trial. Had the Defendants provided adequate warnings, Plaintiff and his physicians would not have used the SmartPort CT at issue.

98.     As a direct, actual, and proximate cause of the Defendants' actions, omissions, and misrepresentations, Plaintiff has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering and medical expenses.

99.     In performing the foregoing acts, omissions, and misrepresentations, the Defendants acted grossly negligent, fraudulently, and with malice.

### <u>COUNT IV: BREACH OF IMPLIED WARRANTY</u>
(Against Defendants AngioDynamics and Navilyst)

100.    Plaintiff incorporates the preceding paragraphs as if set out fully herein.

101.    The Defendants impliedly warranted that the SmartPort CT was merchantable and fit for the ordinary purposes for which it was intended.

– 18 –

COMPLAINT

102.    When the SmartPort CT was implanted in Plaintiff, it was being used for the ordinary purposes for which it was intended.

103.    Plaintiff, individually and/or by and through his physicians, relied upon the Defendants' implied warranties of merchantability in consenting to have the SmartPort CT implanted in his body.

104.    Privity exists between Plaintiff and the Defendants because the Plaintiff's physicians acted as Plaintiff's purchasing agents in the subject transaction and/or because Plaintiff was a third-party beneficiary of the subject contract.

105.    Plaintiff was the intended consumer of the device when the Defendants made the warranties set forth herein, and such warranties were made to benefit Plaintiff as a patient and consumer.

106.    The Defendants breached these implied warranties of merchantability because the SmartPort CT implanted in Plaintiff was neither merchantable nor suited for its intended uses as warranted in that the device varied from its intended specifications, which included, but are not limited to variances in the following respects:

1.    The Defendants' manufacturing process in constructing the catheter of the SmartPort CT implanted in Plaintiff involved too high of a concentration of barium sulfate particles for the polymer formulation, which led to improperly high viscosity of the admixed silicone before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix.

2.    The Defendants knew or should have known barium sulfate is known to contribute to a reduction in the mechanical integrity of the silicone in their product,

– 19 –

COMPLAINT

the SmartPort CT, as the barium sulfate particles dissociate from the surface of the catheter over time; and

3.     These defects led to a heterogenous modified polymer that included microfractures and weakened areas at the location of the higher barium sulfate concentration that ultimately led to the catheter's surface roughness and the formation of a biofilm, and the subsequent development of the catheter-related infection(s)

107.    The Defendants' breaches of their implied warranties resulted in the implantation of an unreasonably dangerous and defective product, the SmartPort CT, into the Plaintiff's body, placing Plaintiff's health and safety in jeopardy.

108.    The SmartPort CT was sold to Plaintiff's health care providers for implantation in patients, such as Plaintiff.

109.    As a direct, actual, and proximate cause of the Defendants' actions, omissions, and misrepresentations, Plaintiff has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering and medical expenses.

110.    Upon information and belief, the Plaintiff's healthcare providers sent notice to the Defendants of the adverse event that occurred to Plaintiff and thus, the nonconformity of the SmartPort CT at issue, within a reasonable period of time following discovery of the breach of warranty and before suit was filed.

## COUNT V: BREACH OF EXPRESS WARRANTY
(Against Defendants AngioDynamics and Navilyst)

111.    Plaintiff incorporates the preceding paragraphs as if set out fully herein.

COMPLAINT

112. The Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the SmartPort CT was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

113. The SmartPort CT did not conform to the Defendants' express representations because it was not reasonably safe, had numerous serious side effects, and caused severe and permanent injury.

114. The Defendants further breached express representations and warranties made to Plaintiff, his physicians and healthcare providers with respect to the SmartPort CT implanted in Plaintiff in the following respects:

    a. The Defendants represented to Plaintiff and his physicians and healthcare providers through labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions among other ways that the SmartPort CT was safe, meanwhile the Defendants fraudulently withheld and concealed information about the substantial risks of serious injury associated with using the SmartPort CT;

    b. The Defendants represented to Plaintiff and his physicians and healthcare providers that the Defendants' SmartPort CT was as safe and/or safer than other alternative procedures and devices then on the market, but fraudulently concealed information that demonstrated that SmartPort CT was not safer than alternative therapies and products then available on the market; and

– 21 –

COMPLAINT

c.  The Defendants represented to Plaintiff and his physicians and healthcare providers that the SmartPort CT was more efficacious than other alternative procedures, therapies, and/or devices. Meanwhile, the Defendants fraudulently concealed information regarding the true efficacy of SmartPort CT.

115.  At all times relevant to this action, the SmartPort CT did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

116.  Plaintiff, his physicians, and the medical community reasonably relied upon the Defendants' express warranties for the SmartPort CT.

117.  Privity exists between Plaintiff and the Defendants because Plaintiff's physicians acted as Plaintiff's purchasing agents in the subject transaction and/or because Plaintiff was a third-party beneficiary of the subject contract.

118.  Plaintiff was the intended consumer of the SmartPort CT when the Defendants made the warranties set forth herein, and such warranties were made to benefit Plaintiff as a patient and consumer.

119.  At all times relevant to this action, the SmartPort CT was used on Plaintiff by his physicians for the purpose and in the manner intended by the Defendants.

120.  Plaintiff and the Plaintiff's physicians, using reasonable care, could not have discovered the breached warranty and realized its danger.

121.  As a direct, actual, and proximate cause of the Defendants' actions, omissions, and misrepresentations, Plaintiff has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering, and medical expenses.

122.  Upon information and belief, the Plaintiff's healthcare providers sent notice to the

COMPLAINT

Defendants of the adverse event that occurred to Plaintiff and thus, the nonconformity of the SmartPort CT at issue, within a reasonable period of time following discovery of the breach of warranty and before suit was filed.

## COUNT VI: FRAUDULENT CONCEALMENT
(Against Defendants AngioDynamics and Navilyst)

123.   Plaintiff incorporates the preceding paragraphs as if set out fully herein.

124.   The Defendants made false statements and representations to Plaintiff and his healthcare providers concerning the SmartPort CT product implanted in Plaintiff.

125.   The Defendants engaged in and fraudulently concealed information with respect to the SmartPort CT in the following respects:

a.   The Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the SmartPort CT was safe, and fraudulently withheld and concealed information about the substantial risks of using the SmartPort CT, including, but not limited to its heightened propensity to precipitate infections, and cause complications;

b.   The Defendants represented that the SmartPort CT was safer than other alternative systems and fraudulently concealed information which demonstrated that the SmartPort CT was not safer than alternatives then available on the market.

c.   The Defendants concealed that they knew of the SmartPort CT's dangerous propensity to precipitate the catheter-related infections; and

d.   The frequency of these failures and the severity of injuries were substantially worse than had been reported.

– 23 –

COMPLAINT

126.    The Defendants knew or should have known that the representations they made concerning the SmartPort CT, as stated above, were false.

127.    The Defendants had sole access to material facts concerning the dangers and unreasonable risks of the SmartPort CT.

128.    The concealment of information by the Defendants about the risks of the SmartPort CT was intentional.

129.    The concealment of information and the misrepresentations about the SmartPort CT was made by the Defendants with the intent that the Plaintiff's health care providers and Plaintiff rely upon them.

130.    Plaintiff and his physicians relied upon the representations and were unaware of the substantial risks of the SmartPort CT which the Defendants concealed from the public, including Plaintiff and his physicians.

131.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has been injured and has sustained economic and non-economic damages, both in the past and future, including for pain and suffering and medical expenses.

132.    The Defendants acted with oppression, fraud, and malice towards Plaintiff.

133.    Had the Defendants not concealed this information, neither Plaintiff nor his health care providers would have consented to using the SmartPort CT implanted into Plaintiff.

## COUNT VII: VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
(Against Defendants AngioDynamics and Navilyst)

134.    Plaintiff incorporates the preceding paragraphs as if set out fully herein.

135.    Plaintiff, a consumer, purchased the SmartPort CT at issue, and the product was

intended for Plaintiff's personal use to treat his medical condition.

136. The acts and practices engaged in by Defendants, as outlined above, constitute unlawful, unfair, false, misleading, or deceptive acts or business practices, in violation of the Kentucky Consumer Protection Act (KCPA). *See* K.R.S. Sections 367.110, *et seq*.

137. The Defendants engaged in unlawful acts or practices, which were unfair, false, misleading or deceptive, including false promises, misrepresentation, deception, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution, and/or advertisement of the SmartPort CT, in violation of the KCPA, Section 367.170(1).

138. Plaintiff purchased the SmartPort CT, a product that was falsely represented, as outlined in this Complaint, as having certain characteristics and benefits it did not have, *inter alia*, that it was reasonably safe for use-in violation of the KCPA.

139. The Defendants further knowingly or recklessly engaged in unfair, false, misleading, or deceptive acts and practices-all in violation of the KCPA-which created a likelihood of confusion or misunderstanding on Plaintiff's part with respect to the SmartPort he purchased, including, but not limited to misrepresenting that the SmarPort was reasonably safe for use and failing to adequately disclose the substantial risk of the catheter-related infections, and harm the product entailed given the large number of adverse events the Defendants knew or should have known of but did not adequately disclose to Plaintiff.

140. The Defendants' unfair, false, misleading or deceptive acts and practices were likely to mislead consumers, who acted reasonably to their detriment in purchasing the product at issue based on Defendants' representations that it was reasonably safe for use, when it in fact was not, and had a higher risk of the catheter-related infections due to its defective design.

COMPLAINT

141. The Defendants intended for Plaintiff, Plaintiff's physicians, and other consumers to rely on their deceptive acts and practices, and representations to continue selling and manufacturing the SmartPort CT.

142. As a result of the Defendants' conduct, Plaintiff suffered economic damages in that the product purchased was misrepresented as reasonably safe for use and was worth far less than the product Plaintiff thought he had purchased had the Defendants' representations been true.

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against each of the Defendants as follows:

a. Judgment be entered against all the Defendants on all causes of action of this Complaint.

b. Plaintiff be awarded his full, fair, and complete recovery for all claims and causes of action relevant to this action.

c. Plaintiff be awarded general damages according to proof at the time of trial.

d. Plaintiff be awarded damages, including past, present, and future medical expenses according to proof at the time of trial.

e. Plaintiff be awarded costs and attorney's fees in connection with Plaintiff's Violation of the Kentucky Consumer Protection Act (KCPA) claim under K.S.R. 367.110, *et seq*.

f. Awarding pre-judgment and post-judgment interest to Plaintiff.

g. Awarding the costs and the expenses of this litigation to Plaintiff.

h. For such other and further relief as the court may deem just and proper.

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Respectfully submitted,

*/s/ William H. Mapes*
William H. Mapes
ALEX DAVIS LAW PSC
445 Baxter Avenue, Ste. 275
Louisville, KY 40204
Phone: (502) 882-6000
Fax: (502) 587-2007
will@acdavislaw.com

Roman Balaban (CO # 39148/*Pro Hac Vice* Application is forthcoming)
Max Yefimenko (CO # 34796/*Pro Hac Vice* Application is forthcoming)
Roman Balaban and Associates, LLC
7350 East Progress Place, Suite 106
Greenwood Village, CO 80111
Phone: 720-817-4040
Fax: 303-500-1713
Email: balaban@rbatort.com
Email: yefimenko@rbatort.com

***ATTORNEYS FOR PLAINTIFF***

COMPLAINT